# United States District Court



FILED
JAN 24 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

EASTERN District of CALIFORNIA

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br>Approximately $389,310.00 in U.S. Currency. | **APPLICATION FOR A WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE**<br><br>CASE NUMBER:<br>2:20-SW-0069-EFB |

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the Eastern District of <u>CALIFORNIA</u> is subject to forfeiture to the United States of America *(describe the property)*:

Approximately $389,310.00 in U.S. Currency.

The property is subject to seizure pursuant to 21 U.S.C. § 881(b), incorporating 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 21 U.S.C § 881(a)(6), concerning violations of 21 U.S.C. §§ 841(a)(1) and 846.

The application is based on these facts:

**See attached affidavit.**

☒ Continued on the attached sheet.

_____
*Applicant's signature*

Joshua Matas, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

1-24-2020                              _____
Date                                    *Judge's signature*

Sacramento, California                  Edmund F. Brennan, U.S. Magistrate Judge
City and State                          *Printed name and title*

# AFFIDAVIT OF JOSHUA MATAS
# IN SUPPORT OF SEIZURE WARRANTS

## I. INTRODUCTION

I, Joshua A. Matas, a Special Agent with the Drug Enforcement Administration (DEA), presently assigned to the Sacramento District Office, being first duly sworn, and state:

1. This affidavit is submitted in support of the Government's application for the issuance of warrants to seize for forfeiture the following:

   a. 1979 Learjet 25D Century III, Tail No. N25CY;

   b. Approximately $389,310.00 in U.S. Currency;

   c. Approximately $37,200.00 US Currency;

   d. Approximately $6,000.00 in U.S. Currency;

   e. Approximately $30,981.06 in funds maintained in Wells Fargo Bank account no. 9715414257 held in the name of MANISH PATEL.

2. This Affidavit is made in support of warrants to seize the above-defined personal property, bank account, and cash pursuant to 21 U.S.C. § 881(b) incorporating 18 U.S.C. § 981(b). The items identified above are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) as they represent proceeds traceable to the sale of controlled substances or funds used or intended to be used to facilitate a federal drug crime in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.

3. Specifically, the facts set forth below establish probable cause to believe that Manish PATEL distributed large quantities of marijuana and marijuana derivatives in the United States and in the Eastern District of California and obtained crime proceeds from those illicit sales, money that was then deposited into bank accounts and used to purchase personal property. The facts further establish that large amounts of cash gained from illicit drug transactions were stored at 4858 Cavitt Ranch Road, Granite Bay, California, a home where Manish PATEL resided.

1

## II. BACKGROUND, TRAINING AND EXPERIENCE OF AFFIANT

4. I am a Special Agent of the United States Department of Justice, Drug Enforcement Administration ("DEA") and have been so employed since 2018. I have been assigned to the Sacramento District Office since November of 2018. Previously, I was employed by the City of Coral Gables and served in the capacity of a Police Officer for 2 years.

5. I have received specialized training in narcotic investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug identification, and asset identification and removal, from the DEA. In addition, I graduated from the DEA Basic Agents Academy at the FBI Academy at Quantico, Virginia. In total, I have received in excess of 500 hours of comprehensive formalized classroom instruction in those areas outlined above.

6. I have assisted in several investigations targeting individuals and organizations violating federal drug statutes. I have assisted in the execution of several search warrants at particular places or premises in search for controlled substances and/or related paraphernalia, indicia, and other evidence of violations of federal drug narcotics statutes. I have also assisted investigations by communicating with confidential informants involved in the trafficking of narcotics, and this has formed the basis of my opinions.

7. As a result, I have encountered and become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by traffickers in their efforts to import, conceal, manufacture, and distribute controlled substances domestically and internationally.

8. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516

9. The facts and information set forth herein are true based upon my personal knowledge and observations, observations of other law enforcement personnel, observations of cooperating

individuals as related to me, my review of investigative reports, notes, transcripts, review of recorded telephone calls, and discussions with other federal, state and local law enforcement officials. I have not included the details of every aspect of the investigation. I have set forth only the facts that I believe are necessary to establish a foundation for warrants to seize the above-defined assets.

### III. THE INVESTIGATION

10. Since August 2018, the DEA Albuquerque District Office ("ADO"), the El Dorado Sheriff's Office ("EDSO"), and the Placer County Sheriff's Office ("PCSO") (collectively referred to as the "Investigating Agencies") have been conducting a criminal investigation of Manish PATEL (hereinafter referred to as "PATEL"). The investigation has also focused on PATEL's associates operating in the greater Sacramento Metropolitan area; Michael LAZAR, Edward GRAYVER, Tyler MCCLEAN, Kevin HEALY and Daniel CHO.

11. Since at least July 2019, the DEA Sacramento District Office ("SDO") in conjunction with Investigating Agencies have collected evidence that Manish PATEL, a licensed attorney in two East Coast states, has conspired to manufacture marijuana and concentrated cannabis oil in the Eastern District of California. Further, PATEL has conspired to transport marijuana and concentrated cannabis oil across the country using his Learjet since at least August 2018 when the DEA interdicted PATEL and several associates at an executive airport in Albuquerque, New Mexico and seized $80,000 in cash and evidence indicating large-scale interstate drug trafficking. In May and June 2019, Investigating Agencies in California executed search warrants at three locations in the Eastern District of California that resulted in the seizure of approximately 1,400 pounds of marijuana contraband and $400,000 in cash.

### IV. 2018 DEA SEARCH OF PATEL'S LEARJET AT A NEW MEXICO AIRPORT

12. As set forth below, PATEL purchased a Learjet 25D, Tail No. N25CY ("Learjet"), for $345,000 in February 2017, and uses his private jet to fly domestically and internationally. PATEL employs a

3

team of certified pilots, typically paying them in cash, and his travel typically involves flying from the East Coast to California, and returning to New Jersey or New York. On many occasions PATEL pays the pilots to fly his Learjet around the country containing only cargo and no passengers.

13. On August 26, 2018, Investigating Agencies stopped PATEL as he boarded his Learjet in Albuquerque, New Mexico. The DEA was conducting a "Ramp Check" of PATEL's Learjet 25D, Tail No. N25CY, identifying the pilots as Bill HARRIS and Erik DESPAIN. Agents found $80,000 in cash, a cashier's check for $450,000 and 2 Apple laptops belonging to the passengers of the plane, PATEL and Edward GRAYVER. The $80,000 in cash was found inside a cardboard box: many bundles of vacuum-sealed stacks of cash ranging from approximately $8,000 to $10,000 in cash.

14. PATEL's and GRAYVER's phones were seized by Investigating Agencies and revealed text communications referencing the trafficking of narcotics from sources of supply in California to states like New York and Florida, as well as laundering of drug proceeds through a complex network of business accounts. The DEA further seized paperwork including various legal contracts, hand written ledgers including pay/owe sheets, and pictures of GRAYVER using paraphernalia commonly associated with marijuana consumption.

15. Since the searches described in detail below, law enforcement has reviewed documents and interviewed several individuals associated with PATEL's acquisition and use of the Learjet. Investigating Agencies interviewed Gary Yelvington, who stated that he sold the Learjet to PATEL for $345,000 in February 2017. The Transaction commenced on December 29, 2016, when PATEL deposited $44,650 into a bank account designated for the Learjet's purchase. Mr. Yelvington told Investigating Agencies the Learjet's purchase price was $345,000 and that the transaction was remarkable because PATEL paid approximately $300,350 in cash to Yelvington in Daytona Beach, Florida, where Yelvington lives. PATEL and Yelvington went to a Bank of

America branch in Daytona Beach to have a teller count the cash. The $300,350 represented the balance of the purchase price after crediting the $44,650 deposited into the bank account in December 2016.

16. The Learjet was purchased by PATEL, but title to the Learjet is held in an LLC out of Nevada. The Bill of Sale for the Learjet references a closing date of February 7, 2017.

### V. MAY 2019 SEARCH OF PATEL'S EL DORADO COUNTY LAB

17. On or about May 9, 2019, El Dorado County Sheriff's Office ("EDSO") detectives received information from an anonymous source that illegal marijuana activity was possibly occurring at a commercial property located at 4175 Business Drive, Suite D in Cameron Park (hereinafter, "Suite D"). The anonymous source described to law enforcement a heavy odor of marijuana emanating from the business and suspicious behavior by individuals associated with the location.

18. On the morning of May 13, 2019, EDSO Detective Alonzo Aguilar contacted 4175 Business Drive's owner, Angelo Cardanini, and property manager, Peter McQuillen. Mr. McQuillen stated that he was aware of a complaint of marijuana odor at Suite D, and that he had responded to Suite D that morning (*May 13, 2019*) and observed active, functioning lab equipment in Suite D. A white male adult approached Mr. McQuillen and stated that the equipment was a "CBD extraction for hemp." Mr. McQuillen then called PATEL as he was listed on one of the documents associated with the lease for Suite D. PATEL told Mr. McQuillen that he would look into the matter and call him back later.

19. On the afternoon of May 13, 2019, EDSO detectives went to Suite D in order to hold the location while a search warrant was obtained. When they arrived on scene, detectives located two individuals, Kevin Healy ("Healy") and Tyler McClean, inside of Suite D. Both men were identified by their New York driver licenses. Healy and Tyler McClean appeared to be working in an active marijuana distillation lab. Tyler McClean identified a white Mercedes in the parking lot

as his, and DMV check of the white Mercedes revealed it was registered to William McClean or Ashley Kern out of Folsom, California. Kevin Healy identified a Ford Fusion as his, which was registered to Vicky Hayes out of Visalia, California.

20. On the evening of May 13, 2019, law enforcement executed a warrant at Suite D and observed an active lab designed to manufacture concentrated cannabis. There were two active distillation machines, multiple 50 gallon drums of alcohol, a bucket containing suspected Hexane, vacuum ovens, large amounts of glassware, air filters with ventilation hoses, dozens of metal pots, hundreds of individual cartridges for hash oil vape pens, vacuum sealers, ethanol extractors, ice chests, a money counter, and notes related to the manufacturing of concentrated cannabis. There was also a large piece of stainless steel machinery in the lab, manufactured by Pope Scientific, Inc. EDSO Detective Mike Roberts later researched the Pope Scientific, Inc. website and found the item, and determined that it was used in the distillation process of cannabis refinement.

21. Inside of Suite D, law enforcement seized over 980 pounds (net weight) of processed marijuana and 88.27 pounds (combined net and gross weights) of concentrated cannabis from the property. Detectives were unable to obtain an accurate net weight of all of the concentrated cannabis. Due to its sticky nature, a significant amount of the concentrated cannabis could not be removed from the storage containers. The net weight they confirmed was 53.55 pounds, however this weight did not include the concentrated cannabis found in storage containers. Therefore, the true net weight of the concentrated cannabis seized from the containers exceeded 53.55 pounds. In total, detectives seized more than approximately 1,000 pounds of marijuana and concentrated cannabis from the marijuana lab in Suite D.

22. During the search detectives also found linkages to marijuana trafficking in Placer County, California and indicia for PATEL, William McClean, and Tyler McClean. For example:
    a. In the area of Suite D devoted to the cannabis lab, detectives found a box with a label showing the parcel had been shipped to Manish PATEL at 4858 Cavitt Ranch Place in

Granite Bay, California. This receipt indicated that the customer had the business name of "High Tech, LLC," a business associated with 8178 Belvedere Avenue in Sacramento, which is a known historical marijuana grow location as discussed below.

b. During a search of Kevin Healy's Ford Fusion and Tyler McClean's Mercedes, law enforcement found materials commonly used to package marijuana such as turkey bags, vacuum bags, packing tape, and bubble wrap. In Tyler McClean's Mercedes, detectives found an automobile insurance card identifying William and Tyler McClean. On the card, the pair listed the 4858 Cavitt Ranch Place in Granite Bay, California as their address. The 4858 Cavitt Ranch Place location is hereinafter referred to as the "Granite Bay Residence."

## VI. FURTHER INVESTIGATION INTO SUITE D'S OCCUPANTS AND THEIR MARIJUANA LAB

23. After the search on May 13, 2019, law enforcement continued its investigation into the owners, operators, and facilitators of Suite D's illegal cannabis lab. As part of those efforts, law enforcement obtained the lease agreement and other financial and business paperwork (*credit report, banking documents*) that the tenants submitted to the property manager to support the lease application for 4175 Business Drive, Suite D. Suite D's lease documents set forth the following about PATEL, William McLean, and the proposed business at Suite D:

   a. The lease agreement stated that Suite D had been rented beginning on May 1, 2019 for $3,500 per month. The lease was for a three-year term, with annual 3% increases and a security deposit of $10,000, and was signed by William McClean on April 26, 2019.

   b. In the lease application package, McClean represented he made over $400,000 in income in 2018.

   c. The property management company also provided email correspondence to EDSO detectives, dated April 28, 2019, which contains William McClean's banking

information. This email was sent from a user identified as William McClean (wbmproperties1010@icloud.com) to Manish PATEL (manish@sentientlawgroup.com), and then forwarded from PATEL to Sandra "Sandy" Zajkowski, the secretary for the property manager.

    d. A document titled "CONSENT TO OBTAIN CREDIT REPORT" was submitted to support the lease application as a guarantee and contained PATEL's personal information. Specifically, this consent form contained PATEL's date of birth, social security number, and signature. On this form, which was dated April 24, 2019, PATEL provided a street address of 64 Barbaree Way in Tiburon, California.

24. In late May 2019, EDSO detectives contacted the Placer County Sheriff's Department ("PCSD") to connect about the linkages of the marijuana lab participants and 4858 Cavitt Ranch Place in Granite Bay—*the Granite Bay Residence*. As described above, PATEL listed the Granite Bay Residence as his delivery address on the parcel found at Suite D, and William and Tyler McClean listed the same Granite Bay address on the insurance documents found in the vehicle parked at Suite D. PCSD detectives relayed to EDSO that it had received a report of an altercation between William McClean and PATEL at the Granite Bay Residence in December 2018. Furthermore, PCSD detectives had recently opened a drug investigation into the occupants of the Granite Bay Residence after receiving information about multiple vehicles (more than ten at a time) being parked at the Granite Bay Residence and constant vehicle traffic at all hours.

25. PCSD detectives learned that PATEL and others occupied the Granite Bay Residence as of October 29, 2018 and paid rent of over $10,000 per month. On April 20 and April 30, 2019, PCSD detectives observed purple lights shining through the opaque garage doors at the residence. At different hours of the night, it appeared that the purple lights were suspended in the center of the usable garage space. The lights appeared to rotate up and down and would stay on for several hours and then turn off, indicating a timed lighting system was likely being utilized, similar to the

systems commonly used in indoor marijuana grows. Based on those observations and his knowledge and experience in law enforcement, Detective Gualco formed the opinion that a marijuana grow was possibly inside of the garage. PCSD detectives conducted surveillance of the Granite Bay Residence and, based on their observations of the activity at the home, they concluded that marijuana was possibly being grown in the residence's garage.

### VII.   SEARCH OF PATEL'S GRANITE BAY MANSION (SEIZURE OF $37,200 AND $389,310 IN CASH)

26. On May 30, 2019, Investigating Agencies executed a search warrant at residence leased by PATEL, 4858 Cavitt Ranch Place in Granite Bay – *the Granite Bay Residence*. A male identified as Michael Lazar ("Lazar") opened the front door of the house. Lazar said he was a "live-in chef". Indicia located inside the Granite Bay Residence identified PATEL, William "Bill" McClean, Daniel Cho, and Lazar as occupants.

27. Throughout the house, detectives located processed marijuana, vacuum sealers, vacuum sealing bags, concentrated cannabis/hash oil, branded marijuana products in a display case, documents showing sales invoice/shipping manifest for marijuana, a money counter, cultivation documents (with strains, harvest date and plant count), and other documents that support a large scale cultivation and manufacturing hub. Additionally, in one of the bedrooms of the house rented by PATEL, detectives located approximately **$37,200 in cash**, two large glass jars containing approximately ¼ to ½ pound of processed marijuana, a digital scale, a box for another digital scale, and a glass jar that had "Nug Forbidden Fruit $40" in the top label (which appeared to be a packaged marijuana product line).

28. Investigating Agencies found documents, mail, and other indicia for PATEL in the master bedroom of the house, including a Sentient Law Group business check book and an envelope with the name "Naresh Patel" on it. A large safe was located in PATEL's bedroom, which contained a certificate for a Learjet 25D, Tail Number N25CY, a check book for **Wells Fargo account no. 9715414257** held in the name of

MANISH PATEL, and a duffle bag with approximately **$389,310 in cash**. The **$389,310 in cash** was broken down into vacuum-sealed rubber-banded stacks. A picture of the cash is imbedded below.



## VIII. SEARCH OF PATEL'S LEARJET

29. Following the search of the Granite Bay Residence, law enforcement continued to investigate PATEL and learned that his Learjet had landed in Sacramento on June 9, 2019. PATEL's Learjet was believed to be at Mather Air Field in Sacramento County. A flight plan for the Learjet indicated that it would be in Sacramento for approximately 4 days before departing for the East Coast on June 13, 2019. The flight plan showed the Learjet was scheduled to fly to Colorado, then Illinois, and then New Jersey.

30. On June 13, 2019, Investigating Agencies conducted surveillance at Hangar #2 at 10510 Superfortress Avenue at Mather Field Airport in Sacramento County. At 10:15 a.m., investigators arrived at Mather Field and saw the doors open to the hangar where the Learjet was parked. The ground crew appeared to be getting ready to pull the plane out, but then left and closed the hangar door. As investigators conducted surveillance, detectives observed two males and two vehicles

10

near the hangar. The vehicles were a Dodge Caravan Bearing California License plate 8EDV674 ("Dodge"), and a Nissan Maxima bearing New Jersey License plate Y71JMR ("Nissan"). The Nissan, which was registered to Daniel Cho, was previously observed by investigators at the Granite Bay Residence.

31. At approximately 11:15 a.m., one of the two males, later identified as Daniel Cho ("Cho"), exited the Nissan, which was parked near Hangar #2, and walked into Hangar #2. Cho remained inside Hangar #2 for a few minutes and then walked back out to the Nissan. At approximately 12:00 p.m., investigators saw the target hangar door open, and the Dodge drove out of the hangar and exited the tarmac from the gate near the hangars. The Dodge pulled up next to the Nissan and PATEL exited the driver's seat of the Dodge. PATEL and CHO were observed switching vehicles. Investigators saw PATEL drive away in the Nissan and CHO drive away in the Dodge. Investigators conducted a vehicle enforcement stop on PATEL and CHO down the road from Mather Field.

32. As Investigators approached the passenger side of the Dodge to contact Cho, investigators noted the smell of marijuana emitting from the vehicle. Cho stated the vehicle did not belong to him and he was driving it for a friend. When investigators asked Cho who he was driving for, he was initially very vague, but later admitted it was PATEL. Cho also told investigators he was staying at the Granite Bay Residence and was attempting to drive back there with PATEL. Cho told investigators that he believed he was working in a legal marijuana business with PATEL.

33. Following a positive K9 alert, law enforcement searched the Dodge and found three large boxes in the trunk. Two of the boxes had commercially packaged marijuana products inside of them, and the third box had clear plastic bags with a green leafy substance that appeared to be marijuana. In total, the Dodge contained 877 individual packets of marijuana, each weighing 7 grams and 9 vacuum sealed bags of marijuana, weighing approximately 1 pound each; additional smaller bags of suspected marijuana were also found.

34. Investigators stopped PATEL's Nissan and told PATEL that he was subject to an arrest warrant (issued out of El Dorado County). PATEL asked if the arrest was "federal or state". Investigators searched PATEL and found a BMW key in the right front pocket of his jeans. In the Nissan's trunk, investigators located two "Ganja Gold" vape pen cartridge boxes with one full vape pen cartridge. The label on the packaging said the cartridge contained marijuana.

35. Investigating Agencies subsequently obtained and executed a warrant for Hangar #2, which housed the Learjet and a BMW I8 registered to PATEL. Inside PATEL's Learjet, detectives found a white envelope with marking "B&H (6K)", written in black sharpie on the exterior. Approximately **$6,000 in cash** was found inside of the white envelope. A further search of the Learjet resulted in the seizure of approximately 47 boxes and odor concealer. The boxes contained vacuum sealed marijuana bud, containers of dried marijuana bud in commercial packaging, vape pens with concentrated cannabis in commercial packaging, and concentrated cannabis edibles. In total, 181.51 net pounds of dried marijuana and 18.41 net pounds of concentrated cannabis were seized from the Learjet. Law enforcement also found a copy of an aircraft hangar agreement for Superior Aviation Company with a cashier's check receipt for $5,950.00 US currency. The cashier's check was drawn on **Wells Fargo account no. 9715414257**, held by Manish Patel, the same bank account corresponding to the check book found in the safe containing $389,310 in cash.

36. The Learjet pilots, Bill Harris and Harry Peterson, were contacted when they tried to access Hangar #2. Mr. Harris and Mr. Peterson said they were contract pilots hired to fly the Learjet and PATEL to Morris Town, New Jersey. Mr. Harris said he flew PATEL to and from Morris Town, New Jersey approximately 10-12 times in 2018 and 5-6 times in 2019. Mr. Harris also said that he had flown PATEL to Houston, Texas on another occasion.

37. Mr. Harris also explained that he first flew for PATEL on February 27, 2017, and that he averaged 1-2 flights per month in the Learjet. PATEL paid Mr. Harris for each flight in cash. Mr. Harris

recalled flying PATEL from California to New Jersey with the Learjet full of what he described as suspicious boxes or cargo approximately six different times. Mr. Harris said that on two occasions PATEL made a last minute decision not to travel with his cargo. PATEL had also provided specific directions not to allow any search of the Learjet during fuel stops without consulting him.

## IX. CONCLUSION

38. I request the issuance of seizure warrants for the following property that facilitated or is proceeds from the distribution and sale of marijuana and marijuana derivatives:

   a. 1979 Learjet 25D Century III, Tail No. N25CY;

   b. Approximately $389,310.00 in U.S. Currency;

   c. Approximately $37,200.00 US Currency;

   d. Approximately $6,000.00 in U.S. Currency;

   e. Approximately $30,981.06 in funds maintained in Wells Fargo Bank account no. 4011603554, held in the name of MANISH PATEL.

Joshua A Matas
Special Agent
Drug Enforcement Administration

Reviewed and approved as to form:

Kevin C. Khasigian
Assistant U.S. Attorney

Subscribed and sworn to before me
this _____ day of January, 2020.

HON. EDMUND F. BRENNAN
United States Magistrate Judge

**ORIGINAL FILED**
JAN 24 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# United States District Court
### EASTERN District of CALIFORNIA

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br><br>Approximately $389,310.00 in U.S. Currency. | **WARRANT TO SEIZE PROPERTY<br>SUBJECT TO FORFEITURE**<br><br>CASE NUMBER:<br>2:20-SW-0069-EFB |

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the Eastern District of CALIFORNIA be seized as being subject to forfeiture to the United States of America. The property is described as follows:

**Approximately $389,310.00 in U.S. Currency.**

The property is subject to seizure pursuant to 21 U.S.C. § 881(b), incorporating 18 U.S.C. § 981(b), and subject to forfeiture pursuant to 21 U.S.C § 881(a)(6).

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property within 14 days in the daytime 6:00 a.m. to 10:00 p.m. You must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to EDMUND F. BRENNAN or Any U.S. Magistrate in the Eastern District of California.

_1-24-2020_ at 10:08 A.M.
Date and Time Issued

*Judge's signature*

Sacramento, California
City and State

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

AO 109 (Rev. 11/13) Warrant to Seize Property Subject to Forfeiture (Page 2)

| **RETURN** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken: | | |

**CERTIFICATION**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

Subscribed, sworn to, and returned before me this date.

_____           _____
U.S. Judge or Magistrate                                                Date